1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHRISTOPHER VARGAS,                          No. 2:14-cv-2211 KJM CKD P (TEMP)

12                Petitioner,

13        v.

14   RON DAVIS, Warden,                           FINDINGS AND RECOMMENDATIONS

15                Respondent.

16

17          Petitioner is a state prisoner proceeding without counsel with a petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

19   entered against him on October 18, 2011, in the Sacramento County Superior Court on two counts

20   of committing a lewd or lascivious act upon a child under the age of 14 years.  He seeks federal

21   habeas relief on the following grounds:  (1) his trial counsel rendered ineffective assistance; (2)

22   the trial court committed sentencing error; (3) the trial court violated his rights in failing to

23   modify or drop the charges against him; and (4) the evidence is insufficient to support the jury's

24   verdict.  Upon careful consideration of the record and the applicable law, the undersigned

25   recommends that petitioner's application for habeas corpus relief be denied.

26   /////

27   /////

28   /////

                                                  1

1   **I. Background**

2           In its unpublished memorandum and opinion affirming petitioner's judgment of

3   conviction on appeal, the California Court of Appeal for the Third Appellate District provided the

4   following factual summary:

5           A jury found defendant Christopher Vargas guilty of committing a
        lewd act upon his 11–year–old stepson J.D. (count one) and upon
6           his 12–year–old stepson G.D. (count two).   (Pen. Code, § 288,
        subd. (a).)[1]   The trial court sentenced defendant to an aggregate
7           term of eight years in state prison, consisting of the middle term of
        six years on count one, and a consecutive two years on count two.

8

9           Defendant appeals, contending his trial counsel was ineffective in
        failing to request a jury instruction on the defense of accident with
10          respect to count two because there was substantial evidence he
        touched G.D.'s penis while they both were sleeping.  He also asserts
11          the trial court abused its discretion by relying on circumstances in
        aggravation that were not supported in the record to justify
12          imposition of the middle term on count one.  To the extent he was
        required to object to the trial court's reliance on such factors to
13          preserve the issue on appeal, defendant asserts he was denied his
        right to effective assistance of counsel.

14          We shall conclude there is no evidence to support an instruction on
        the defense of accident, and in any event, defendant was not
15          prejudiced by counsel's failure to request such an instruction
        because the jury was properly instructed on the issue that would
16          have been presented by such an instruction.  We shall further
        conclude defendant forfeited his claim of sentencing error by failing
17          to object below, and even assuming his trial counsel was ineffective
        in failing to object, remand is unnecessary because it is not
18          reasonably likely the trial court would have imposed the lower term
        had counsel raised a timely objection.  Accordingly, we shall affirm
19          the judgment.

20          **FACTUAL AND PROCEDURAL BACKGROUND**

21          **A.**

22          **The Prosecution**

23          In March 2011, defendant lived with his wife and her three
        children.  On March 23, 2011, 11–year–old J.D. went to sleep at
24          approximately 8:30 p.m.  When he woke up later that night,
        defendant was kneeling next to his bed, and defendant's hand was
25          touching J.D.'s penis over his pajamas.  Defendant was moving his
        hand in a circular motion.  When defendant saw J.D. was awake, he
26          put their dog on J.D.'s bed and left the room.

27

28   [1]   Further undesignated statutory references are to the Penal Code.

The next morning J.D. told his mother what had happened, and she told him to act like nothing had happened until defendant left for work. After defendant left, J.D.'s mother summoned her other children, told them what J.D. had said about defendant touching him, and asked whether anything like that had ever happened to them. Her daughter A.D. immediately said no, but her then 17–year–old son G.D. said defendant may have done something similar to him when he was younger. At that point, their mother called the police.

On March 25, 2011, G.D. was questioned by a detective during a Special Assault Forensic Evaluation (SAFE) interview. During that interview, G.D. discussed an incident that occurred in approximately 2005, when he was about 12 years old and his mother was dating defendant. He and defendant were watching television in J.D.'s room. G.D. was lying on J.D.'s bed, and defendant was sitting in a chair next to the bed. G.D. fell asleep, and when he woke up a little while later, defendant's hand was inside G.D.'s boxer shorts, touching his penis. Defendant was moving his hand up and down. When G.D. moved a little, defendant removed his hand. About five minutes later, defendant again placed his hand inside G.D.'s boxer shorts and touched G.D.'s penis. At that point, G.D. got up, told defendant, "[Y]ou're sick, leave me alone, I'm telling my mom." G.D. went into his own bedroom, and defendant followed, asking G.D. what was wrong. When G.D. accused defendant of touching his penis, defendant told him he must have been dreaming.

At trial, G.D. told a somewhat different story. He testified he and defendant were watching television in J.D.'s bedroom. G.D. was lying on J.D.'s bed, and defendant was sitting on the edge of the bed. G.D. fell asleep, and when he awoke about an hour later, defendant was laying next to him on the bed. Defendant had his hand on G.D.'s penis, inside his boxer shorts. Defendant's hand may have been moving a little. At that point, G.D. got up and told defendant, "You're sick. I'm going to my bedroom." Defendant woke up, followed J.D. out of the room, and asked him what was wrong. When G.D. accused defendant of touching G.D.'s penis, defendant said something like, "It might have been an accident, but I don't think it happened. It might have been a dream."

When asked about the differences between his statements during the SAFE interview and his testimony at trial, G.D. said he did not accurately portray the incident during the SAFE interview because he was "upset" and "had a lot of thoughts going through [his] mind." G.D. also stated, "I don't believe it was done purposefully to me. I think the night I said it happened to me it was accidentally. I think we were both sleeping, and his hand accidentally . . . fell on me right there in my private area."

/////

/////

/////

3

1

**B.**

2

**The Defense**

3

Defendant did not testify at trial.  During closing argument, his trial counsel argued the incident involving J.D. never happened, and that

4

J.D. must have dreamed it.   J.D.'s mother (defendant's wife) testified that a week or so after the alleged incident, J.D. asked her

5

if he would get into trouble if it was just a dream.

6

With respect to G.D., defendant's trial counsel argued any touching was not intentional, noting G.D.'s testimony that defendant

7

appeared to have been sleeping at the time the incident occurred, and G.D.'s belief that the touching was accidental.

8

9

People v. Vargas, No. C070027, 2013 WL 4506768, at *1-2 (Cal. Ct. App. Aug. 22, 2013).

10

**II.  Standards of Review Applicable to Habeas Corpus Claims**

11

An application for a writ of habeas corpus by a person in custody under a judgment of a

12

state court can be granted only for violations of the Constitution or laws of the United States.  28

13

U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

14

application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502

15

U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

16

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

17

corpus relief:

18

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

19

granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

20

21

(1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

22

23

 (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

24

25

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

26

holdings of the United States Supreme Court at the time of the last reasoned state court decision.

27

Greene v. Fisher, ___ U.S. ___, ___, 132 S. Ct. 38, 44 (2011); Stanley v. Cullen, 633 F.3d 852,

28

859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Circuit court

4

precedent "may be persuasive in determining what law is clearly established and whether a state

court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606

F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen

a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme]

Court has not announced." Marshall v. Rodgers, ___ U.S. ___, ___, 133 S. Ct. 1446, 1450 (2013)

(citing Parker v. Matthews, ___ U.S. ___, ___, 132 S. Ct. 2148, 2155 (2012)).  Nor may it be

used to "determine whether a particular rule of law is so widely accepted among the Federal

Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.  Id.  Further,

where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is

"clearly established Federal law" governing that issue.  Carey v. Musladin, 549 U.S. 70, 77

(2006).

    A state court decision is "contrary to" clearly established federal law if it applies a rule

contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from the Supreme Court's

decisions, but unreasonably applies that principle to the facts of the prisoner's case.  Lockyer v.

Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002

(9th Cir. 2004).  A federal habeas court "may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly.  Rather, that application must also be

unreasonable." Williams, 529 U.S. at 412.  See also Schriro v. Landrigan, 550 U.S. 465, 473

(2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v.

Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

1    must show that the state court's ruling on the claim being presented in federal court was so

2    lacking in justification that there was an error well understood and comprehended in existing law

3    beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.

4           If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

5    court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

6    527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

7    (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

8    2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

9    de novo the constitutional issues raised.").

10          The court looks to the last reasoned state court decision as the basis for the state court

11   judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

12   If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

13   previous state court decision, this court may consider both decisions to ascertain the reasoning of

14   the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

15   federal claim has been presented to a state court and the state court has denied relief, it may be

16   presumed that the state court adjudicated the claim on the merits in the absence of any indication

17   or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption

18   may be overcome by a showing "there is reason to think some other explanation for the state

19   court's decision is more likely."  Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803

20   (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims but

21   does not expressly address a federal claim, a federal habeas court must presume, subject to

22   rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, ___ U.S. ___,

23   ___, 133 S. Ct. 1088, 1091 (2013).

24          Where the state court reaches a decision on the merits but provides no reasoning to

25   support its conclusion, a federal habeas court independently reviews the record to determine

26   whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

27   Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

28   review of the constitutional issue, but rather, the only method by which we can determine whether

6

1   a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853.  Where no

2   reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

3   reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

4        A summary denial is presumed to be a denial on the merits of the petitioner's claims.

5   Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

6   just what the state court did when it issued a summary denial, the federal court must review the

7   state court record to determine whether there was any "reasonable basis for the state court to deny

8   relief." Richter, 562 U.S. at 98.  This court "must determine what arguments or theories . . . could

9   have supported, the state court's decision; and then it must ask whether it is possible fairminded

10  jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

11  decision of [the Supreme] Court." 562 U.S. at 102.  The petitioner bears "the burden to

12  demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v.

13  Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

14       When it is clear, however, that a state court has not reached the merits of a petitioner's

15  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

16  habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

17  F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

18  **III. Petitioner's Claims**

19       A. **Ineffective Assistance of Counsel**

20       Petitioner raises several claims of ineffective assistance of trial counsel.  After setting

21  forth the applicable legal principles, the court will evaluate these claims in turn below.

22              **1. Applicable Legal Principles**

23       The clearly established federal law governing ineffective assistance of counsel claims is

24  that set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  To

25  succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was

26  deficient and that (2) the "deficient performance prejudiced the defense." Id. at 687.  Counsel is

27  constitutionally deficient if his or her representation "fell below an objective standard of

28  reasonableness" such that it was outside "the range of competence demanded of attorneys in

7

1  criminal cases." Id. at 687–88 (internal quotation marks omitted).  "Counsel's errors must be 'so

2  serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"  Richter, 562 at

3  104 (quoting Strickland, 466 U.S. at 687).  A reviewing court is required to make every effort "to

4  eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

5  challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

6  Strickland, 466 U.S. at 669.  See also Richter, 562 U.S. at 107 (same).

7           Reviewing courts must "indulge a strong presumption that counsel's conduct falls within

8  the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  There is in

9  addition a strong presumption that counsel "exercised acceptable professional judgment in all

10  significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

11  Strickland, 466 U.S. at 689).  This presumption of reasonableness means that the court must "give

12  the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of

13  possible reasons [defense] counsel may have had for proceeding as they did."  Cullen v.

14  Pinholster, 563 U.S. 170, 196 (2011) (internal quotation marks and alterations omitted).

15           Prejudice is found where "there is a reasonable probability that, but for counsel's

16  unprofessional errors, the result of the proceeding would have been different."  Strickland, 466

17  U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

18  outcome."  Id.  "The likelihood of a different result must be substantial, not just conceivable."

19  Richter, 131 S. Ct. at 792.

20           "The standards created by Strickland and § 2254(d) are both "highly deferential," and

21  when the two apply in tandem, review is 'doubly' so."  Richter, 562 U.S. at 105 (citations

22  omitted).  Thus, in federal habeas proceedings involving "claims of ineffective assistance of

23  counsel, . . . AEDPA review must be """doubly deferential""" in order to afford "both the state

24  court and the defense attorney the benefit of the doubt."  Woods v. Daniel, ___U.S.___, ___, 135

25  S. Ct. 1372, 1376 (2015) (quoting Burt v. Titlow, 571 U.S. ___, ___, 134 S. Ct. 10, 13 (2013)).

26  As the Ninth Circuit has recently acknowledged, "[t]he question is whether there is any

27  reasonable argument that counsel satisfied Strickland's deferential standard."  Bemore v.

28  Chappell, 788 F.3d 1151, 1162 (9th Cir. 2015), cert. denied, 136 S.Ct. 1173 (2016) (quoting

8

1   Richter, 562 U.S. at 105).   See also Griffin v. Harrington, 727 F.3d 940, 945 (9th Cir. 2013)

2   ("The pivotal question is whether the state court's application of the Strickland standard was

3   unreasonable. This is different from asking whether defense counsel's performance fell below

4   Strickland's standard.") (quoting Richter, 562 U.S. at 101).

5   **2.  Failure to Request Jury Instruction on Defense of Accident**

6   Petitioner claims that his trial counsel rendered ineffective assistance in failing to request

7   a jury instruction on the defense of accident with respect to the count involving G.D.   He argues

8   that the trial evidence reflected he may have touched G.D. while he was sleeping or in the process

9   of waking up, and he notes that G.D. testified he thought the touching was accidental.  (ECF No.

10  1 at 5, 16, 19.)[2]  Petitioner also argues that his trial counsel's failure to request such a jury

11  instruction was prejudicial because, without it, the jury might not have realized that "if petitioner

12  touched G.D. by accident, he did not have the requisite criminal intent and he had to be found not

13  guilty of the nonforcible child molestation charge of which G.D. was the alleged victim."  (Id. at

14  20.)  He claims that the absence of an instruction on accident might have prevented the jury from

15  fully considering his defense that the touching was accidental.  (Id.)

16  Petitioner raised this claim of ineffective assistance of counsel on appeal and in a petition

17  for review filed in the California Supreme Court.  (Resp't's Lod. Docs. 5, 9.)  The petition for

18  review was summarily denied.  (Resp't's Lod. Doc. 10.)  In the last reasoned decision on this

19  claim, the California Court of Appeal ruled as follows:

20  **Defendant's Trial Counsel Was Not Ineffective for Failing to**
    **Request an Instruction on the Defense of Accident Because**
21  **There Was No Evidence Defendant Accidentally Touched G.D.,**
    **and Even If There Was, Defendant Was Not Prejudiced by**
22  **Counsel's Failure**

23  Defendant contends he "was denied his right to the effective
    assistance of counsel under the United States and California
24  Constitutions when his trial attorney failed to request an instruction
    on the defense of accident" as to count two, which involved G.D.
25  According to defendant, such an instruction was warranted because
    "there was substantial evidence that [he] touched [G.D.'s] penis by
26

27  ───────────
    [2]   Page number citations such as this one are to the page numbers reflected on the court's
    CM/ECF system and not to page numbers assigned by the parties.
28

9

accident while they were both sleeping."  Defendant asserts he was prejudiced by counsel's failure because "the jury was not told by the trial court that if [defendant] touched [G.D.] by accident, he did not have the requisite criminal intent . . . ."  We are not persuaded.

To prevail on his ineffective assistance claim, defendant must show both (1) that counsel's performance fell below a standard of reasonable competence, and (2) that counsel's shortcomings resulted in prejudice.  (People v. Anderson (2001) 25 Cal.4th 543, 569.)  Defendant has done neither.  As we shall explain, there is no evidence to support an instruction on the defense of accident, and even if there was, defendant was not prejudiced by counsel's failure to request such an instruction because the jury was properly instructed on the issue which would have been presented to the jury by the omitted instruction.

Section 26 provides in part:

"All persons are capable of committing crimes except those belonging to the following classes: [¶] ... [¶]

"Three - Persons who committed the act . . . charged under an ignorance or mistake of fact, which disproves any criminal intent.

"Four - Persons who committed the act charged without being conscious thereof.

"Five–Persons who committed the act . . .  charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence."

The defense of accident appears in CALCRIM No. 3404, which explains the defendant is not guilty of the charged offense if he acted "without the intent required for that crime, but acted instead accidentally."

At trial, defendant, through his counsel, requested that the trial court instruct on the defense of unconsciousness in the language of CALCRIM No. 3425, which reads in pertinent part: "The defendant is not guilty of _____ <insert crime[s]> if (he/she) acted while legally unconscious.  Someone is legally unconscious when he or she is not conscious of his or her actions.  [Someone may be unconscious even though able to move.]     [¶] Unconsciousness may be caused by (a blackout[,]/ [or] an epileptic seizure [,]/ [or] involuntary intoxication[,]/ [or] sleepwalking [,]/ or _____ <insert a similar condition> )."   The trial court declined defendant's request, concluding there was no substantial evidence to support such an instruction.  Defendant does not appeal that ruling.  Rather, he contends his trial counsel was ineffective for not requesting an instruction on the defense of accident because "there was substantial evidence that [defendant] touched [G.D.'s] penis by accident while they were both sleeping."

Merriam–Webster's Collegiate Dictionary defines "sleep" as "the natural periodic *suspension of consciousness* during which the

powers of the body are restored . . . ."   (Merriam–Webster's Collegiate Dict. (11th ed. 2006) p. 1171, col. 2, italics added.) Where the evidence shows the conscious mind of the accused ceased to operate and his actions were "'controlled by the subconscious or subjective mind,'" the jury should be instructed as to the legal effect of such unconsciousness.   (People v. Freeman (1943) 61 Cal.App.2d 110, 118; People v. Roerman (1961) 189 Cal.App.2d 150, 161; see People v. Sedeno (1974) 10 Cal.3d 703, 717 ["An unconscious act within the contemplation of the Penal Code is one committed by a person who because of somnambulism [(an abnormal condition of sleep in which motor acts, such as sleepwalking are performed)], a blow on the head, or similar cause is not conscious of acting and whose act therefore cannot be deemed volitional"], overruled on another ground in People v. Breverman (1998) 19 Cal.4th 142, 165, & disapproved on another ground in People v. Flannel (1979) 25 Cal.3d 668, 684, fn. 12; People v. Ferguson (2011) 194 Cal.App.4th 1070, 1083).   Indeed, CALCRIM No. 3425 (Unconsciousness) lists "sleepwalking" as possible cause of a defendant's unconsciousness.  Thus, if anything, evidence defendant was sleeping when he reached inside G.D.'s boxer shorts and touched G.D.'s penis gave rise to a defense of unconsciousness, not accident.

As defendant points out, courts have described the affirmative defense of accident as "a claim that the defendant acted without forming the mental state necessary to make his actions a crime." (People v. Gonzales (1999) 74 Cal.App.4th 382, 390, disapproved on other ground in People v. Anderson (2011) 51 Cal.4th at 998, fn. 3.)   While it is true that a person who does an act without being conscious thereof does so "without forming the mental state necessary to make his actions a crime," it is apparent from section 26 that the Legislature did not consider acts committed by a person without being conscious thereof to be accidents.   Section 26 separately delineates acts committed without being conscious thereof and acts committed through misfortune or accident.   Had the Legislature intended that acts committed without the defendant being conscious thereof to be considered accidents, there would be no need to separately delineate a defense of unconsciousness.

In any event, defendant was not prejudiced by trial counsel's failure to request the instruction because the jury was properly instructed that to find defendant guilty of committing a lewd act on a child under 14 it would have to conclude, inter alia, that defendant willfully touched G.D.'s penis with the intent of arousing himself or G.D.   (See People v. Jones (1991) 234 Cal.App.3d 1303, 1314, disapproved on other grounds in People v. Anderson, supra, 51 Cal.4th at p. 998, fn. 3.)   The trial court instructed the jury, pursuant to CALCRIM No. 1110, that to find defendant guilty of the crime of committing a lewd act upon a child, it had to find defendant "willfully touched any part of a child's body . . . [¶]  . . . with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child . . . ."   "Willfully" was properly defined for the jury as meaning "willingly or on purpose."

/////

11

1
2
3
4
5
6
7

> Given the jury's verdicts, it is clear, beyond credible argument, that the jury necessarily rejected the evidence adduced at trial that would have supported a finding that defendant's accident defense (meant to establish that he acted accidentally, and thus, without the requisite criminal intent, when he slipped his hand inside G.D.'s boxer shorts and touched his penis), thus, implicitly resolving the question of that defense adversely to defendant.  (See People v. Jones, supra, 234 Cal.App.3d at pp. 1315–1316.)
>
> Consequently, defendant cannot establish he was prejudiced by trial counsel's failure to request an instruction on the defense of accident, and his ineffective assistance claim fails.

8    Vargas, 2013 WL 4506768, at *2-4.

9           This court agrees with the California Court of Appeal that petitioner has failed to

10   demonstrate he was prejudiced by his trial counsel's failure to request a jury instruction on

11   accident.  As explained by the state court, petitioner's jury was instructed that in order to find

12   petitioner guilty on counts one and two, it must find that he willfully (defined as "willingly or on

13   purpose") touched any part of a child's body.  (Clerk's Transcript on Appeal (CT) at 104-05.)

14   Petitioner's trial counsel argued during closing argument that petitioner committed the acts while

15   he was in the process of waking up and that his actions were not intentional.  (Reporter's

16   Transcript on Appeal (RT), Vol. II, at 369-72.)  The guilty verdict on the count involving G.D.

17   reflects that the jury rejected petitioner's argument that his actions were accidental and decided,

18   instead, that he acted "willingly or on purpose."  In light of the jury's decision that petitioner did

19   not touch G.D. by accident, a jury instruction explaining what the verdict should be if petitioner

20   "committed the act . . . by accident" would not have led to a different result.

21          The decision of the California Court of Appeal with respect to this claim of ineffective

22   assistance of counsel is not unreasonable and is certainly not "so lacking in justification that there

23   was an error well understood and comprehended in existing law beyond any possibility for

24   fairminded disagreement."  Richter, 562 U.S. at 103.  Accordingly, petitioner is not entitled to

25   federal habeas relief.

26                    **3.  Failure to Call G.D. as a Trial Witness**

27          Petitioner claims that he was denied "due process, his right to present a defense, to compel

28   witnesses for the defense, and effective assistance of counsel" when his trial counsel failed to call

12

1    G.D. as a defense witness.  He states that G.D. could have "impeach[ed] or contradict[ed]" the

2    testimony of J.D.  (ECF No. 1 at 32.)  Specifically, petitioner claims that G.D. would have

3    testified that J.D. told him he did not believe his allegations against petitioner were accurate but

4    that he did not want to change his story because he was afraid his biological father would be

5    "mad at him" if he did.  (ECF No. 1 at 8, 32.)

6           In support of this claim, petitioner has attached a letter signed by G.D. on April 27, 2012,

7    wherein G.D. states that petitioner touched him accidentally and that anything he told police to

8    the contrary was a "lie."  He further states that "when my brother [J.D.], thought that it may have

9    been a dream by asking, "*If it was a dream, will I get in trouble,*" and then confirmed it wasn't

10   true by saying, "*My dad will be mad if I tell the truth*, (meaning his biological dad) I then came

11   clean about the lie I had told on Mr. Vargas."  (Id. at 42.) (emphasis in original.)  Petitioner notes

12   that Christina Vargas, the victims' mother, testified that approximately a week and a half after the

13   touching incident, J.D. asked her, "If it was a dream, will I get in trouble?"  (RT at 295.)

14          During his trial testimony, J.D. was asked by petitioner's trial counsel whether he

15   remembered telling his mother that he thought the touching incident was "probably a dream" but

16   that he was afraid she and his biological father would be "mad at him" and that "everything was

17   ruined."  (Id. at 133.)  J.D. responded that he did not remember having this conversation.  (Id.)

18   Later, petitioner's trial counsel asked Christina Vargas whether J.D. had made these statements to

19   her, or whether J.D.'s biological father had said anything to J.D. about the touching incident.  The

20   trial court sustained objections to these questions and they were never answered.  (Id. at 295,

21   302.)  Petitioner refers to all of this testimony, apparently in an attempt to support his claim that

22   G.D. could have established that J.D. thought the touching incident was simply a dream but was

23   afraid to change his story because he thought his biological father would be mad at him.  (ECF

24   No. 1 at 32.)  Petitioner argues, "it is reasonably probable that with the mother's statements, the

25   counsel's questioning of an interview that [J.D.] did not recall and the expected testimony of

26   [G.D.] (age 18 at the time of trial) the jury would have found the inconsistencies of [J.D.'s]

27   testimony and the pattern of the witnesses testimony to be unjust to bring a guilty verdict."  (Id. at

28   32-33.)

1    Petitioner explains that G.D. was "available and expected to testify" for the defense, but

2    that trial counsel failed to call him.  (Id. at 33.)  He argues that G.D.'s testimony was "crucial"

3    because the prosecutor "strategized to discredit Christina Vargas' testimony to the jury."  (Id.)

4    Petitioner contends that there was no reasonable tactical reason for trial counsel's failure to call

5    G.D. as a witness.

6    Petitioner also informs the court that he retained his trial counsel, who had limited

7    experience, with the understanding that a more senior attorney from the same law firm would "be

8    at the defendant's table during the trial to monitor and assist" trial counsel.  (Id. at 34.)  However,

9    this promised assistance never materialized and petitioner's counsel handled the trial on his own.

10   (Id. at 34-35.)  Petitioner states that he would not have agreed to retain trial counsel if he had

11   known that counsel would not be assisted by a more experienced attorney.  (Id. at 35.)  He also

12   states that his trial counsel was ill with the flu during trial and had to move for a one day

13   continuance.  (Id.)

14   Essentially, petitioner is claiming that his trial counsel rendered ineffective assistance in

15   failing to call G.D. as a trial witness because G.D. could have: (1) provided support for his

16   Christina Vargas' testimony that J.D. expressed some doubts about his original accusations

17   against petitioner; and (2) could have impeached J.D.'s testimony that the touching was

18   intentional.  Petitioner also appears to be claiming that his attorney's inexperience, standing

19   alone, constitutes ineffective assistance of counsel.[3]

20   **a. Exhaustion**

21   It does not appear that petitioner exhausted this ineffective assistance of counsel claim in

22   state court.  The arguments petitioner makes in support of this claim were not raised on appeal, in

23   his petition for review, or in his habeas petition filed in the California Supreme Court.

24   _____

25   [3]  The court notes that G.D. testified for the prosecution and was cross-examined by petitioner's trial counsel.  During that cross-examination, counsel explored G.D.'s opinion that petitioner's

26   actions were accidental.  He also explored the differences between G.D.'s trial testimony and his original statements to the police.  (See, e.g., RT at 204-12, 215, 224.)  Counsel did not, however,

27   ask G.D. about the topics petitioner now suggests in his claim before this court.  Because G.D. was a trial witness, the court will analyze this claim as a failure by trial counsel to effectively

28   cross-examine G.D. and not a failure to call G.D. as a witness.

1    Generally, a state prisoner must exhaust all available state court remedies either on direct

2    appeal or through collateral proceedings before a federal court may consider granting habeas

3    corpus relief.  28 U.S.C. § 2254(b)(1).  A state prisoner satisfies the exhaustion requirement by

4    fairly presenting his claim to the appropriate state courts at all appellate stages afforded under

5    state law.  Baldwin v. Reese, 541 U.S. 27, 29 (2004); Casey v. Moore, 386 F.3d 896, 915-16 (9th

6    Cir. 2004).  However, an application for a writ of habeas corpus "may be denied on the merits,

7    notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

8    State."  28 U.S.C. § 2254(b)(2).  Even assuming arguendo that petitioner's third claim for relief is

9    unexhausted, this court will recommend that it be denied on the merits pursuant to 28 U.S.C. §

10   2254(b)(2).

11   **b. Background**

12   The state court record reflects the following:  Christina Vargas was asked by petitioner's

13   trial counsel whether J.D. ever told her "that he may have dreamt the entire matter."  (RT at 295.)

14   As set forth above, she said "yes," and explained that, about a week and a half after the incident,

15   J.D. asked her, "if it was a dream, will I get in trouble?"  (Id.)  She also testified that sometimes

16   J.D. had trouble distinguishing dreams from events that had actually occurred.  (Id. at 297-98.)

17   Trial counsel asked Ms. Vargas several times whether J.D.'s father had said anything to him

18   about the touching incident.  (Id.)  Objections to these questions were all sustained.  (Id. at 295,

19   302.)  Ms. Vargas also testified that J.D.'s description of the touching incident changed in several

20   particulars over time.  (Id. at 297.)  In addition, G.D. told her that his initial statements to the

21   police about petitioner touching him inappropriately were "a misrepresentation."  (Id. at 300.)

22   Vargas agreed that, approximately a week and a half after petitioner's arrest, J.D. and G.D. started

23   "backing off" their original statements to police.  (Id. at 317.)

24   G.D. testified that petitioner touched him inappropriately several years prior to the

25   incident with J.D.  (Id. at 180.)  He described that incident in some detail.  (Id. at 185-87, 188-93.)

26   However, he also testified that his statements to the police describing this incident were not true.

27   Specifically, he stated:

28   /////

15

It wasn't – I don't believe it was true, because the day it happened, or the day my little brother told me, you know, I had a lot of – a lot of thoughts going through my mind, and I was upset.

(Id. at 188.)  He testified that petitioner would never "purposely do something like that to me."

(Id. at 207.)  He also testified that he now believed the touching was an accident and that he had

mischaracterized to the police what had happened.  (Id. at 209-11.)  He stated:

. . . I don't think it was purposely done.  I think it was accidental. We were both sleeping, and his hand accidentally fell on me right there.

(Id. at 215.)

During closing argument, petitioner's trial counsel argued that J.D. may have simply

dreamed that petitioner touched him inappropriately, as evidenced by his statements to his mother

and the fact that he sometimes had trouble distinguishing dreams from reality.  (Id. at 373-74,

378.)  Counsel emphasized the ways in which J.D.'s description of the touching incident changed

over time.  (Id. at 375-76.)  He noted that G.D. also eventually recanted his initial accusations.

(Id. at 374.)

### c. Analysis

After a thorough review of the record, including the testimony set forth above, this court

concludes that petitioner has failed to demonstrate his trial counsel's decision not to cross-

examine G.D. about J.D.'s questions or statements to his mother and/or to G.D. "fell below an

objective standard of reasonableness" or was outside "the range of competence demanded of

attorneys in criminal cases."  Strickland, 466 U.S. at 687–88.  It is possible that counsel believed

G.D.'s answers would have been inadmissible, cumulative, or unhelpful to the defense.  The court

notes, in this regard, that virtually all of this information came before the jury through the

testimony of Christina Vargas.  Petitioner has failed to overcome the strong presumption that

counsel's decision not to cross-examine G.D. about the subjects suggested by petitioner was a

reasonable tactical decision and sound trial strategy.  See Strickland, 466 U.S. at 687-90

(reasonable tactical decisions, including decisions with regard to the presentation of the case, are

"virtually unchallengeable"); United States v. Opplinger, 150 F.3d 1061, 1071-72 (9th Cir.1998),

overruled on other grounds by United States v. Contreras, 593 F.3d 1135 (9th Cir. 2010) ( per

16

1    curiam ) (a decision not to call a witness based upon sound logic and tactics does not constitute

2    ineffective assistance of counsel); Morris v. California, 966 F.2d 448, 456 (9th Cir.1991) (a

3    tactical decision not to call a particular witness cannot form the basis of a ineffective assistance of

4    counsel claim, even if the defendant disagrees with the decision).

5          Nor has petitioner demonstrated that trial counsel's actions resulted in prejudice.  By

6    virtue of the testimony described above, petitioner's jury learned that both J.D. and G.D. partially

7    recanted their allegations against petitioner after his arrest.  They were told that J.D. suggested the

8    whole thing might have been a dream and that sometimes he could not distinguish dreams from

9    reality.  All questions about whether J.D.'s father had spoken to him about the molestation were

10   blocked by the trial judge.  Under these circumstances, there is no reasonable probability the

11   result of the proceedings would have been different if G.D. had been asked whether J.D. told his

12   mother the molestation incident might have been a dream but was afraid to change his story

13   because his biological father might be upset.

14         Petitioner has also failed to demonstrate that his trial counsel's lack of experience,

15   standing alone, constituted ineffective assistance of counsel.  As respondent points out, "[i]t is

16   well established that an ineffective assistance claim cannot be based solely on counsel's

17   inexperience."  Ortiz v. Stewart, 149 F.3d 923, 933 (9th Cir. 1998).  See also United States v.

18   Cronic, 466 U.S. 648, 665 (1984) (Supreme Court rejected an ineffective assistance claim based

19   on allegations that the appointed trial attorney was young, that his principal practice was in real

20   estate, and that this was his first jury trial).  Accordingly, for the foregoing reasons, petitioner is

21   not entitled to habeas relief on his third claim for relief.[4]

22   /////

23   /////

24   _____

25   [4]  Although petitioner also alleges that his rights to due process, to present a defense, and to
     compel witnesses for the defense were violated, his allegations solely concern trial counsel's

26   deficient performance.  Trial counsel's failure to cross-examine G.D. about J.D.'s statements did
     not render petitioner's trial fundamentally unfair, prevent him from presenting his defense, or

27   prevent him from calling witnesses in his defense.  Accordingly, petitioner is not entitled to relief
     on any such claim.

28

1    **B. Sentencing Error**

2         In his second claim for relief, petitioner argues that the trial court committed sentencing

3    error and abused its discretion when it "used alleged circumstances in aggravation that were not

4    supported by the record to justify imposition of the middle term of imprisonment on the Count I

5    non-forcible child molestation conviction." (ECF No. 1 at 7.)  Specifically, petitioner claims that

6    the evidence introduced at his trial did not support a finding that the count involving J.D.

7    "disclosed a high degree of cruelty, viciousness and callousness, and that the crimes involved

8    violent conduct." (Id. at 23, 25-26.)  He argues:

9              In the present case, [petitioner] was only charged and convicted of a
               violation of section 288, subdivision (a).  This is a child molestation
10             offense committed without violence.  In addition, there no evidence
               that [petitioner] used any violence during commission of either
11             offense.  Further, [petitioner] had scored a zero on the Static 99,
               indicating he was not a danger to commit further offenses.  Thus,
12             any finding that the crime involved acts of violence, or that
               [petitioner] was a danger to society, was simply not supported by
13             the record.

14   (Id. at 26.)  Petitioner further claims that if an objection was required to preserve this issue on

15   appeal, his trial counsel rendered ineffective assistance in failing to object to his sentence on the

16   count involving J.D. (Id. at 7, 27-30.)

17                         **1. Exhaustion and Procedural Default**

18        Petitioner's claims in this regard were not raised on direct appeal, in his petition for

19   review, or in his habeas petition filed in the California Supreme Court.  (See Resp't's Lod. Docs.

20   5, 9, 11.)  Accordingly, they appear to be unexhausted.  However, this court will recommend that

21   these claims be denied on the merits pursuant to 28 U.S.C. § 2254(b)(2).

22        As set forth above, the California Court of Appeal ruled, in part, that petitioner forfeited

23   his sentencing claim because his trial counsel failed to raise a contemporaneous objection to his

24   sentence at the time it was imposed.  Respondent argues the state court's finding of waiver based

25   on the lack of a contemporaneous objection constitutes a state procedural bar precluding this

26   court from addressing the merits of petitioner's sentencing claim.  (ECF No. 15 at 29.)

27        State courts may decline to review a claim based on a procedural default.  Wainwright v.

28   Sykes, 433 U.S. 72, 86-87 (1977).  As a general rule, a federal habeas court "'will not review a

18

1   question of federal law decided by a state court if the decision of that court rests on a state law

2   ground that is independent of the federal question and adequate to support the judgment.'"

3   Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting

4   Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  The state rule is only "adequate" if it is

5   "firmly established and regularly followed."  Id.  (quoting Ford v. Georgia, 498 U.S. 411, 424

6   (1991)).  See also Bennett v. Mueller, 322 F 3d 573, 583 (9th Cir. 2003) ("[t]o be deemed

7   adequate, the state law ground for decision must be well-established and consistently applied.")

8   The state rule must also be "independent" in that it is not "interwoven with the federal law."  Park

9   v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting Michigan v. Long, 463 U.S. 1032,

10  1040-41 (1983)).  Even if the state rule is independent and adequate, the claims may be heard if

11  the petitioner can show:  (1) cause for the default and actual prejudice as a result of the alleged

12  violation of federal law; or (2) that failure to consider the claims will result in a fundamental

13  miscarriage of justice.  Coleman, 501 U.S. at 749-50.

14          Respondent has met his burden of adequately pleading an independent and adequate state

15  procedural ground as an affirmative defense.  See Bennett, 322 F.3d at 586.  Petitioner does not

16  deny that his trial counsel failed to raise a contemporaneous objection to his midterm sentence on

17  count one.  Although the state appellate court proceeded to address petitioner's sentencing claim

18  on the merits, it also expressly held that the issue was waived on appeal because of defense

19  counsel's failure to object at trial.  Petitioner has failed to meet his burden of asserting specific

20  factual allegations that demonstrate the inadequacy of California's contemporaneous-objection

21  rule as unclear, inconsistently applied or not well-established, either as a general rule or as

22  applied to him.  Bennet, 322 F.3d at 586; Melendez v. Pliler, 288 F.3d 1120, 1124-26 (9th Cir.

23  2002).  Petitioner's claim of sentencing error therefore appears to be procedurally barred.  See

24  Coleman, 501 U.S. at 747; Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Paulino v. Castro, 371

25  F.3d 1083, 1092-93 (9th Cir. 2004).  Petitioner has also failed to demonstrate that there was cause

26  for his procedural default or that a miscarriage of justice would result absent review of the claims

27  by this federal habeas court.  See Coleman, 501 U.S. at 748; Vansickel v. White, 166 F.3d 953,

28  /////

19

957-58 (9th Cir. 1999).  Nonetheless, even if this claim were not procedurally barred, for the

following reasons it lacks merit and should be denied.

### 2. State Court Decision

The California Court of Appeal denied petitioner's sentencing claims on direct appeal,

largely on state law grounds.  The court reasoned as follows:

> **Defendant Forfeited His Claim of Sentencing Error by Failing to Object Below; and, Even Assuming His Trial Counsel Was Ineffective in Failing to Object Below, Defendant Was Not Prejudiced by Counsel's Failure**
>
> Defendant contends "[t]he trial court abused its discretion when it used alleged circumstances in aggravation that were not supported by the record to justify imposition of the middle term of imprisonment" on count one.  Acknowledging his failure to object to the court's reliance on the challenged circumstances below, defendant further asserts that "if an objection was required[,] . . . [he] was denied his right to the effective assistance of counsel."  As we shall explain, defendant forfeited his claim by failing to object below, and even assuming his trial counsel was ineffective, he was not prejudiced by counsel's failure.
>
> The sentencing options available for a defendant convicted of committing a lewd act upon a child under the age of 14 years are prison terms of three, six, or eight years.  (§ 288, subd. (a).)  In pronouncing sentence, the trial court is required to "select the term which, in the court's discretion, best serves the interests of justice." (§ 1170, subd. (b).)  We review the trial court's sentencing decisions under the deferential abuse of discretion standard.  (People v. Sandoval (2007) 41 Cal.4th 825, 847.)  A trial court abuses its discretion if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for the decision.  (Ibid.)
>
> As a preliminary matter, we find defendant forfeited his claim by failing to object to the trial court's reliance on the challenged circumstances in aggravation below.  (People v. Scott (1994) 9 Cal.4th 331, 353.)  Assuming for argument's sake that counsel performed ineffectively at sentencing, remand is unnecessary because defendant has not shown it is reasonably probable the court would have chosen the lower term had counsel raised a timely objection.  (See People v. Anderson, supra, 25 Cal.4th at p. 569.)
>
> At sentencing, the trial court received into evidence the probation report, the prosecution's statement in aggravation, a letter in aggravation from J.D., and testimony in support from defendant's family and friends.  The probation report listed four circumstances in aggravation: the crime involved acts disclosing a high degree of cruelty, viciousness, or callousness; the manner in which the crime was carried out indicates planning; defendant took advantage of a position of trust as the victims' stepfather/mother's boyfriend; and

defendant engaged in violent conduct, which indicates a danger to society.   Defendant contends there was no evidence the crime involved acts that disclosed a high degree of cruelty, viciousness, or callousness or that he engaged in violent conduct.

In addition to the challenged circumstances, the probation report noted the manner in which the crimes were carried out indicates planning, and defendant took advantage of a position of trust. Defendant does not challenge the trial court's reliance on those circumstances in aggravation, and they are well supported in the record.   Defendant waited until the victims were asleep before touching them, which indicates planning, and his position as J.D.'s stepfather and G.D.'s mother's boyfriend shows defendant took advantage of a position of trust.  As defendant points out, the report also cites two factors in mitigation; however, the trial court discounted those circumstances at sentencing, stating: "The Court has seen the mitigating facts here that the defendant has no criminal record of conduct, but the Court's sentencing the defendant for a particularly old case in regard to Count One."[5]   The court continued, "defendant has led a generically productive life, and this is his first criminal conviction.    But then you look at the aggravating factors . . . .   [¶]   This is a matter where as to Count One, the appropriate thing is to sentence the defendant to the midterm, which is six years in state prison."   The court also emphasized the circumstance of defendant's position of trust, stating, "the harm that [defendant's conduct] does to that family unit is apparent to the Court with the position that one of the victims has taken in front of the Court, in front of the jury, and today at sentencing."[6]

On this record, we find it is not reasonably probable the trial court would have imposed a lesser sentence had it known it could not rely on the challenged circumstances.  Thus, even assuming defendant's trial counsel was ineffective in failing to object to the challenged circumstances, defendant was not prejudiced by the error. Accordingly, defendant's ineffective assistance claim fails.

Vargas, 2013 WL 4506768, at *4-5.

### 3. Analysis

Petitioner's federal habeas challenge to the trial court's decision to sentence him to the middle term on count one essentially involves an interpretation of state sentencing law.  As

---

[5]   It appears the court was referring to count 2 as the "old case," but erroneously stated "Count One" because the conduct that forms the basis of count one (J.D.) occurred in 2011, while the conduct that forms the basis of count two (G.D.) occurred in approximately 2005.

[6]   At trial, G.D. testified that it appeared defendant was asleep when he touched G.D. and, thus, he believed the touching was accidental.  At the sentencing hearing, G.D. said he believed defendant "is most definitely innocent" and that the "whole thing was accidental."

21

1    explained above, "it is not the province of a federal habeas court to reexamine state court

2    determinations on state law questions."  Wilson, 562 U.S. at 5 (quoting Estelle, 502 U.S. at 67-

3    68).  This federal habeas court is bound by the state court's interpretation of state law.  Bradshaw,

4    546 U.S. at 76; Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993).  So long as a sentence

5    imposed by a state court "is not based on any proscribed federal grounds such as being cruel and

6    unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violation of

7    state statutes are matters of state concern."  Makal v. State of Arizona, 544 F.2d 1030, 1035 (9th

8    Cir. 1976).  Thus, "[a]bsent a showing of fundamental unfairness, a state court's misapplication

9    of its own sentencing laws does not justify federal habeas relief."  Christian v. Rhode, 41 F.3d

10   461, 469 (9th Cir. 1994).  Petitioner has failed to show that his sentence of the middle term for

11   committing a lewd and lascivious act on J.D. is fundamentally unfair.

12          Petitioner's claim that his trial counsel rendered ineffective assistance at the sentencing

13   hearing should also be rejected.  The Strickland standards apply in the context of noncapital

14   sentencing proceedings.  Daire v. Lattimore, 812 F.3d 766 (9th Cir. 2016).  See also Glover v.

15   United States, 531 U.S. 198, 202-04 (2001).  However, as noted by the California Court of

16   Appeal, the trial judge's remarks at sentencing reflect that he would not have imposed a lesser

17   sentence on count one even if petitioner's trial counsel had made the argument that two of the

18   factors in aggravating did not apply.  Specifically, the judge tended to discount the mitigating

19   factor of "no criminal record of conduct" because petitioner's molestation of G.D. had simply

20   gone undetected.  The judge also appeared to be troubled by the impact of petitioner's actions on

21   G.D., who originally told his mother that petitioner touched him inappropriately but changed his

22   story over time and ultimately testified at the sentencing hearing that the molestation was

23   accidental and that petitioner was innocent.  As noted by the California Court of Appeal, the trial

24   judge stated, "[t]he fact that the victims care for this defendant who served for years as their

25   father figure and actual provider just underscores from the Court's perspective the psychological

26   harm that's done by this particular type of offense, lewd acts with a minor."  (RT at 406.)

27          The conclusion of the California Court of Appeal that the sentencing judge would not

28   have imposed a shorter sentence even if petitioner's trial counsel had objected to the aggravating

1   factors of cruelty and violence is not unreasonable, given the judge's comments at the sentencing

2   hearing.  Trial counsel's failure to raise a meritless objection to petitioner's sentence does not

3   constitute ineffective assistance.  See Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000)

4   (citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)) (an attorney's failure to make a

5   meritless objection or motion does not constitute ineffective assistance of counsel)); see also

6   Matylinsky v. Budge, 577 F.3d 1083, 1094 (9th Cir. 2009) (counsel's failure to object to

7   testimony on hearsay grounds not ineffective where objection would have been properly

8   overruled); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action

9   can never be deficient performance").

10       For the foregoing reasons, petitioner is not entitled to federal habeas relief on his claim of

11   sentencing error or on his related claim of ineffective assistance of trial counsel.

12       **C. Trial Court's Failure to Modify or Drop Charges**

13       In his final ground for relief, petitioner claims that the trial court "neglected to exercise its

14   power to modify or drop charges under Penal Code §1118.1 after hearing the case and adding a

15   lesser included offense on the jury instructions after determining there was no evidence to support

16   the charges."[7]  (ECF No. 1 at 36.)  Petitioner contends that the trial judge improperly denied his

17   motion to "dismiss Penal Code 288 from the jury instructions due to a lack of evidence as

18   supported by the Due Process Clause of the Fourteenth Amendment of the United States

19   Constitution."[8]  (Id.)  Petitioner also argues there was "no testimony, nor any substantial evidence

20   _____

21   [7]   Cal. Penal Code § 1118.1 provides:

22            In a case tried before a jury, the court on motion of the defendant or
              on its own motion, at the close of the evidence on either side and
             before the case is submitted to the jury for decision, shall order the
23            entry of a judgment of acquittal of one or more of the offenses
              charged in the accusatory pleading if the evidence then before the
             court is insufficient to sustain a conviction of such offense or
24            offenses on appeal.  If such a motion for judgment of acquittal at
              the close of the evidence offered by the prosecution is not granted,
25            the defendant may offer evidence without first having reserved that
              right.

26

27   [8]   As set forth above, petitioner was charged with two counts of committing lewd or lascivious
     acts on a minor, in violation of Cal. Penal Code § 288.

28

1    introduced to justify a 288 took place to support judgement [sic] on either count." (Id. at 37-38.)

2    He contends that the evidence, at most, supported a charge of "simple battery." (Id. at 38.)

3    Petitioner requests that the "verdict be reversed to the lesser included offense of simple battery

4    (Penal Code 242) or acquittal on both counts." (Id. at 39.)

5          Respondent argues that petitioner's claim that the trial court improperly denied his motion

6    for acquittal under Cal. Penal Code § 1118.1 is unexhausted. Even assuming the claim is

7    unexhausted, it should be denied. As set forth above, a claim based on a violation of a state

8    statute is not cognizable in federal habeas. Estelle, 501 U.S. at 67-68. Petitioner's claim that the

9    trial court violated state law in denying his motion for acquittal, which is solely a matter of state

10   concern, should be denied. See Jones v. Hedgpeth, No. EDCV 08-1353 JHN (FFM), 2011 WL

11   7563886, at *10 (C.D. Cal. Nov. 21, 2011) (challenge to trial court's failure to grant motion of

12   acquittal under § 1118.1 not cognizable in federal habeas action because it involves solely a

13   matter of state law).

14         Petitioner also appears to be raising a claim that the evidence introduced at his trial is

15   insufficient to support his conviction on counts one and two. This claim was arguably raised by

16   petitioner in his habeas petition filed in the California Supreme Court. (See Resp't's Lod. Doc.

17   11 at "page 6 of 12.") The Supreme Court denied that habeas petition with citations to In re

18   Dixon, 41 Cal.2d 756, 759 (1953), and In re Lindley, 29 Cal.2d 709, 723 (2947). (Respondent's

19   Lod. Doc. 12.) Respondent argues the Supreme Court's citations to In re Dixon and In re Lindley

20   constitutes a state procedural bar precluding this court from addressing the merits of petitioner's

21   claim of insufficient evidence. (ECF No. 15 at 37.) This court will assume petitioner's claim of

22   insufficient evidence is not barred and will address it on the merits. See Lambrix v. Singletary,

23   520 U.S. 518, 524-25 (1997) (a reviewing court need not invariably resolve the question of

24   procedural default prior to ruling on the merits of a claim if procedural bar issues are more

25   complex than the merits issues presented); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir.

26   2002) (same).

27         The Due Process Clause "protects the accused against conviction except upon proof

28   beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

1    charged." In re Winship, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a

2    conviction if, "after viewing the evidence in the light most favorable to the prosecution, any

3    rational trier of fact could have found the essential elements of the crime beyond a reasonable

4    doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "[T]he dispositive question under

5    Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a

6    reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443

7    U.S. at 318).  Put another way, "a reviewing court may set aside the jury's verdict on the ground

8    of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos

9    v. Smith, ___ U.S. ___, 132 S.Ct. 2, *4 (2011).

10           In conducting federal habeas review of a claim of insufficient evidence, "all evidence

11   must be considered in the light most favorable to the prosecution." Ngo v. Giurbino, 651 F.3d

12   1112, 1115 (9th Cir. 2011).  "Jackson leaves juries broad discretion in deciding what inferences

13   to draw from the evidence presented at trial," and it requires only that they draw "'reasonable

14   inferences from basic facts to ultimate facts.'" Coleman v. Johnson, ___ U.S. ___, 132 S.Ct.

15   2060, 2064 (2012) ( per curiam ) (citation omitted).  "'Circumstantial evidence and inferences

16   drawn from it may be sufficient to sustain a conviction.'" Walters v. Maass, 45 F.3d 1355, 1358

17   (9th Cir.1995) (citation omitted).

18           "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging

19   the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."

20   Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  In order to grant relief, the federal habeas

21   court must find that the decision of the state court rejecting an insufficiency of the evidence claim

22   reflected an objectively unreasonable application of Jackson and Winship to the facts of the case.

23   Ngo, 651 F.3d at 1115; Juan H., 408 F.3d at 1275 & n.13.  Thus, when a federal habeas court

24   assesses a sufficiency of the evidence challenge to a state court conviction under AEDPA, "there

25   is a double dose of deference that can rarely be surmounted." Boyer v. Belleque, 659 F.3d 957,

26   964 (9th Cir. 2011).  The federal habeas court determines sufficiency of the evidence in reference

27   to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at

28   324 n.16; Chein, 373 F.3d at 983.

1    After reviewing the state court record in the light most favorable to the jury's verdict, this

2    court concludes that there was sufficient evidence introduced at petitioner's trial to support his

3    convictions for committing lewd and lascivious conduct.  There was significant evidence

4    supporting petitioner's convictions on both of the counts against him through the testimony of

5    both victims and their mother.  It is true that there was also evidence that the victims recanted

6    their original allegations, or at least called them into question.  However, the question in this

7    federal habeas action is not whether there was evidence from which the jury could have found for

8    the petitioner.  Rather, in order to obtain federal habeas relief on this claim, petitioner must

9    demonstrate that the state courts' denial of relief was an objectively unreasonable application of

10   the decisions in <u>Jackson</u> and <u>Winship</u> to the facts of this case.  Specifically, he must show that no

11   rational trier of fact could have found the essential elements of the counts against him beyond a

12   reasonable doubt and that no rational trier of fact could have agreed with the jury's decision.

13   Petitioner has failed to make this showing.  Accordingly, he is not entitled to federal habeas relief

14   on his claim of insufficient evidence.

15   **IV. Conclusion**

16   For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

17   application for a writ of habeas corpus be denied.

18   These findings and recommendations are submitted to the United States District Judge

19   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

20   after being served with these findings and recommendations, any party may file written

21   objections with the court and serve a copy on all parties.  Such a document should be captioned

22   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

23   shall be served and filed within fourteen days after service of the objections.  Failure to file

24   objections within the specified time may waive the right to appeal the District Court's order.

25   <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.

26   1991).  In his objections petitioner may address whether a certificate of appealability should issue

27   in the event he files an appeal of the judgment in this case.  <u>See</u> Rule 11, Federal Rules Governing

28   /////

1    Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

2    enters a final order adverse to the applicant).

3    Dated:  May 6, 2016

4                                                    _____
                                                     CAROLYN K. DELANEY
5                                                    UNITED STATES MAGISTRATE JUDGE

6

7    Dmou8(2);vargas2211.hc(du)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28